THEODORE F. RANDOLPH and others, trustees, &c.,

*v.*

THE NEW JERSEY WEST LINE RAILROAD COMPANY.

1. A mortgage deed to trustees for bondholders, from which words of inheritance have been inadvertently omitted, will be reformed as against subsequent encumbrancers and purchasers with notice.

2. Whether a fee is intended to pass or not, by a trust deed, may be gathered from its provisions, in the absence of words of inheritance.

3. Where the mortgage has been recorded in full, and its provisions require that the trustees should have an estate in fee simple in order to execute them, the record is notice that the mortgage was intended to pass a fee.

4. Where a railroad company mortgaged its main line of railroad from the eastern terminus thereof, at the city of Newark, westerly,

across the state of New Jersey, to the western terminus of the railroad, at the Pennsylvania state line, and the lands for said main line and the franchises acquired and to be acquired, pertaining to said main line. *Held*, that it does not embrace lands and franchises acquired by and under a subsequent act of the legislature authorizing an extension of the road from Newark, easterly, to the Hudson river.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. Flavel McGee*, for complainants.

*Mr. W. Z. Larned*, of New York, for the executors of Beekman.

*Mr. T. N. McCarter*, for Asa Packer.

THE CHANCELLOR.

The questions presented for determination on the hearing were, whether the complainants' mortgage, which is without words of inheritance, should be reformed as against the judgment creditors of the company; as to whether it covers the land purchased from the state and conveyed to the company after the mortgage was made, and the franchises obtained by the act of 1872; and whether it is entitled to priority over the judgments, as to the goods and chattels of the company thereby mortgaged, seeing that it was not filed as a mortgage of chattels according to the provisions of the act " concerning chattel mortgages." *Rev.* p. 708.

The mortgage of the complainants was given to them, as trustees, to secure the payment of bonds to be issued by the New Jersey West Line Railroad Company, to the amount of $3,000,000. The evidence is clear that, when that mortgage was made, it was the intention of the company to make, and the expectation of the complainants to receive, a mortgage in fee as to the real property, and unlimited (except by the duration of the franchises themselves) in the

franchises thereby mortgaged.  The *habendum* of the mortgage is to the trustees, as joint-tenants, and not as tenants in common, and to the survivors of them, and their successors and assigns, as joint-tenants, and not as tenants in common' as aforesaid, to the only proper use, benefit and behoof of the trustees, and the survivor of them, and their successors and assigns, as joint-tenants, and not as tenants in common as aforesaid, forever in trust, nevertheless, &c.

That words of inheritance were omitted in drawing the mortgage, was due to inadvertence.  The company, and the counsel who drew it, and the complainants, and, in fact, all who were concerned in the matter, believed that a fee passed by it, and that apt words had been used to that end.    It appears that the mortgage was recorded (not registered merely) in the counties of Essex, Union, Somerset, Morris, and Hunterdon.  All purchasers and encumbrancers subsequent to the recording, therefore, had constructive notice of the entire contents of the instrument. It was a conveyance, by way of mortgage, in trust, and the estate intended to be conveyed to the trustees may be ascertained from the provisions of the trust itself.  If they require for their execution that the trustees shall have an estate in fee, then an estate in fee will be held to have passed to them.    The mortgage provides that, in case of default for the period of six months after presentation of coupons for interest and demand of payment, or default for six months in payment of principal, the trustees, or the survivors of them, or their successors, may sell and dispose of the mortgaged premises, and make and deliver to the purchaser or purchasers thereof, good and sufficient deed and deeds in the law, in fee simple, therefor; and that the sale and conveyance so made shall be a perpetual bar, both in law and in equity, against the company, and all claiming or to claim the property under it, or its successors or assigns; and that the sale shall vest the right, title, estate, interest, property and possession of, in, and to the premises wholly and absolutely in the purchaser or purchasers.    To execute

this provision of the mortgage a fee in the trustees is necessary, for they could not convey a fee if they themselves had only a less estate. This provision is of itself evidence and notice of the estate intended to be conveyed by the mortgage, that it was an estate in fee. *Perry on Trusts*, § 312. The mortgage, therefore, may be reformed, as prayed in the bill, in the words of conveyance and in the *habendum* clause, as against all the defendants.

The complainants' mortgage does not cover the land conveyed by the state in Hudson county, nor the franchises granted to the company by the act of 1872. That mortgage was made on the 11th of March, 1870. The mortgaged premises are thereby described as all and singular the railroad of the New Jersey West Line Railroad Company, and all the appurtenances thereto belonging, acquired and to be acquired, constructed and to be constructed, throughout and along the entire main line of the company's railroad, from the eastern terminus of the railroad at the city of Newark, westerly, across the state of New Jersey, to the western terminus of the railroad at the Pennsylvania state line, including all the lands and real estate acquired, and that should be acquired by the company, in which the said main line of the company's railroad then was by law authorized to be constructed; also, the bridge across the Delaware, and the tracks thereon, and all the tracks, bridges, viaducts and fences on, and that should be on, and belonging to the said main line of said railroad, together with all the franchises and privileges to own, obtain, construct, operate, manage and maintain the said main line of railroad, possessed by the company as a corporation; also, the depots, station houses, engine houses, car houses, freight houses, water stations, turn-tables, machine and other buildings and structures on or along and adjacent to said main line, belonging to, or that should be acquired by the company, or that should be used in or along said main line of railroad, together with the land on which the same were or should be erected, acquired or that should be acquired by the com-

pany, &c., &c., and all the property, franchises, rights and things, of whatsoever name or nature, then held, or which should thereafter be held or acquired by the railroad company or their successors, pertaining to said main line of railroad or the equipment thereof, together with all and singular the tenements, hereditaments and appurtenances to the said main line of railroad, lands and premises, or either thereof, belonging, &c.

The covenant to stand seized and possessed of property to be acquired in the future, by its terms embraces only any lands which the company should acquire for use as part of the width allowed by law to be held and owned by the company for said main line, or to be used for bridges, depots, station houses, or other buildings, or any equipment, or any other property or things, of whatever name or nature, for use as part of said main line of railroad, or for bridges, depots, station houses, or other buildings adjoining thereto, or any rights or privileges of the company which should result from any addition or chartered rights of the company in the ownership or management of the said main line of railroad, excluding, however, from the operation of the covenant any branch railroad that might be built to connect with the main line.

The covenant for further assurance covers the same property and franchises as the last mentioned covenant, and all such franchises as might thereafter be acquired by the company, their successors or assigns, to facilitate the ownership, use or management of said main line of railroad, with the appurtenances.

In 1872 the act before referred to was passed, giving the company authority to extend its road from Newark to the Hudson river. This extension, so far as appears, was not contemplated when the mortgage was made. It is not within the terms of the mortgage or its covenants. It is no part of the main line from Newark to the Pennsylvania state line. The franchise was not acquired for use as a part of that main line, nor does it pertain thereto. It was, indeed,

acquired for use in connection with that main line, but it was to build another road. But, if the complainants' mortgage covered the land in Hudson county, the mortgage held by the trustees for the support of public schools, and that held by Beekman's estate, would be entitled to priority over it as to the land mortgaged thereby, for it was neither registered nor recorded in Hudson county. The mortgage to the trustees for the support of public schools, was given to secure the payment of purchase money of the property thereby mortgaged. The holders of the Beekman mortgage had no notice of the complainants' mortgage. They had no constructive notice. By their answer they deny actual notice to themselves, or Beekman or Cadwell. Though the bill calls for answers without oath, this denial would put the complainants to proof of actual notice.

The remaining question, as to whether the mortgage is entitled to priority over the judgments as to the chattels thereby mortgaged, will be reserved until the coming in of the master's report. The master will be directed, in addition to the usual directions, to report what personal property is covered by complainants' mortgage. The evidence shows clearly that it is necessary to sell the whole of the mortgaged premises to pay the mortgage.

The conclusion is, that the complainants' mortgage will be rectified, as prayed in the bill; that it will be decreed not to embrace the land in Hudson county, or the franchises granted by the act of 1872, and that neither the land in Hudson county nor those franchises can be sold in this suit.